IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANY ALEXIS JIMENEZ            :        No. 3:26cv1152
HERNANDEZ,                     :
        Petitioner    :        (Judge Munley)
                              :
                              :
                              :
  v.                         :
                              :
                              :
MARKWAYNE MULLIN, in his      :
Official Capacity, Secretary of the :
U.S. Department of Homeland   :
Security; TODD BLANCHE, in his :
Official Capacity, Acting Attorney :
General of the United States;  :
CAMMILLA WAMSLEY, in her      :
Official Capacity as Philadelphia :
Office Director for Enforcement :
and Removal Operations, U.S.  :
Immigration and Customs       :
Enforcement; CRAIG A. LOWE, in :
his Official Capacity as the  :
Warden, Pike County           :
Correctional Facility,        :
        Respondents   :
............................................................................................................

## MEMORANDUM ORDER

Before the court is a petition for writ of habeas corpus filed by Dany Alexis

Jimenez Hernandez pursuant to 28 U.S.C. § 2241.[1] (Doc. 1).  Petitioner

---

[1] Federal district courts are authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is detained "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Jimenez Hernandez filed the instant petition while detained at a county prison in Pike County, Pennsylvania. The petitioner asserts that his continued detention violates his right to due process. He also asserts that the wrong provision of the INA is being used to justify his detention. Thus, the court has habeas jurisdiction over the petition. Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004).

challenges his present detention at the Pike County Correctional Facility ("Pike CCF") by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). He argues that his detention without a bond hearing under 8 U.S.C. § 1225(b)(2) is unlawful. Section 1225(b)(2) does not apply to individuals like Jimenez Hernandez who have resided within the United States for years. Therefore, for the reasons set forth below, the petition will be granted in part.

Based on the limited facts available to the court, the petitioner is a native and citizen of El Salvador.[2] (Doc. 1-1). He is 19 years old. (Doc. 5-2, Resp. Ex. 1 at 2). He entered the United States as a minor. That is, on August 27, 2023, Jiminez Hernandez was apprehended by the United States Border Patrol after entering the United States near Hidalgo, Texas. Id. at 3. He was released at the border on his own recognizance. Id. Jiminez-Hernandez has a pending I-589 Application for Asylum, the details of which are unknown. Id. He has lived in the United States since that time.

At some point, the petitioner made his way to Chambersburg, Pennsylvania. There, authorities were looking to apprehend petitioner's brother,

---

[2] The petition for writ of habeas corpus provides no information about the petitioner. These background facts are derived from two exhibits provided by the respondents.

2

Henry, who was wanted in Harris County, Texas for charges of continuous sexual abuse of a child under 14 years of age. Id.

On March 17, 2026, ICE deportation officers from the York Field Operations received a tip with respect to Henry's whereabouts. The office conducted surveillance on a residence in Chambersburg. Id.

The petitioner left the house first. At approximately 6:20 AM on March 18, 2026, officers observed Jiminez Hernandez depart the residence in a 2015 white Honda Civic known to be driven by his brother. Id. ICE officers and deputies from the Franklin County Sheriff's Department initiated a vehicle stop on West South Street. Id. They arrested the petitioner.

Jiminez Hernandez, the petitioner, told federal officers that his brother was still at the residence. Id. Henry later surrendered to county deputy sheriffs when they knocked on the door of the house. Id. Both brothers were taken to the York ICE office for processing. Id. ICE later transferred petitioner to Pike CCF. Ostensibly, the brother was or will be extradited to face charges in Texas.

In conjunction with his arrest, ICE served the petitioner with a Notice to Appear, initiating removal proceedings. Jiminez Hernandez has been administratively charged with violating 8 U.S.C. § 1182(a)(7)(a)(i)(I) as being present in the United States without possession of a valid, unexpired immigrant visa or other legally required entry documents.

3

With his petition for writ of habeas corpus, Jiminez Hernandez argues that he is unlawfully detained as the result of the government's misapplication of 8 U.S.C. § 1225(b)(2)(A), a mandatory detention statute.  Per the petitioner, his detention is governed by 8 U.S.C. § 1226(a), a discretionary detention statute.  Petitioner further argues that, due to this misclassification, his due process rights are being violated.  Petitioner requests his immediate release from Pike CCF.

On behalf of the respondents, the United States Attorney's Office for the Middle District of Pennsylvania asserts that 8 U.S.C. § 1225(b)(2)(A) applies to the petitioner and that his detention does not violate the INA or the Due Process Clause of the Fifth Amendment.  Two appellate decisions align with the respondents' reading of Section 1225, Buenrostro-Mendez v. Bondi, 166 F.4th 494 (5th Cir. 2026) and Avila v. Bondi, 170 F.4th 1128 (8th Cir. 2026).  This manner of statutory construction authorizes indefinite confinement of individuals like the petitioner.

On the other hand, the Second Circuit Court of Appeals, the Sixth Circuit Court of Appeals, the Eleventh Circuit Court of Appeals, and at least 370 federal district court judges, including the undersigned, reject the government's reading of Section 1225.[3] See Lopez-Campos v. Raycraft, No. 25-1965, 2026 WL

-------

[3] This total also includes all judges in the Middle District of Pennsylvania to consider the issue. See Quispe v. Rose, No. 3:25-CV-2276, --- F. Supp. 3d ----, 2025 WL 3537279, at *5 (M.D. Pa. Dec. 10, 2025) (Mehalchick, J.); Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865 at *5

1283891, at *13 (6th Cir. May 11, 2026); <u>Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami</u>, No. 25-14065, 2026 WL 1243395, at *5–20 (11th Cir. May 6, 2026); <u>Cunha v. Freden</u>, No. 25-3141-PR, --- F. 4th ----, 2026 WL 1146044, at *4, *14–23 (2d Cir. Apr. 28, 2026); <u>see also</u> <u>Castanon-Nava v. U.S. Dep't of Homeland Sec.</u>, No. 25-3050, --- F. 4th ----, 2026 WL 1223250, at *9–21 (7th Cir. May 5, 2026) (Lee, J.) (portion of lead opinion not joined by concurring judge).

   With respect to this matter, the court sees no reason to deviate from <u>Lopez-Campos</u>, <u>Hernandez Alvarez</u>, <u>Cunha</u>, or its prior decisions.[4]  In petitioner's case, he was released on his own recognizance at the border into the United States in August 2023.  He lived in the United States for over two years before being detained.  As a result, Section 1226(a) applies to his detention, not Section

---

(December 8, 2025) (Mariani, J.); <u>Nossov v. Hoover</u>, No. 1:25-2562, 2026 WL 711691, at *3 (M.D. Pa. Mar. 13, 2026) (Mannion, J.); <u>Diaz Aparicio v. Lowe</u>, No. 3:25-CV-02413, 2026 WL 526702, at *8 (M.D. Pa. Feb. 25, 2026) (Saporito, J.); <u>Romero v. Lowe</u>, No. 4:26-CV-00009, 2026 WL 296215, at *5 (M.D. Pa. Feb. 4, 2026) (Brann, C.J.); <u>Hernandez v. Kunes</u>, No. 1:25-CV-01847, 2026 WL 411726, at *5 (M.D. Pa. Feb. 13, 2026) (Wilson, J.); <u>Chaudhari v. Rose</u>, No. 3:26-CV-242, 2026 WL 540378, at *6 (M.D. Pa. Feb. 26, 2026) (Neary, J.).

[4] The Third Circuit heard oral argument regarding this issue on May 11, 2026, based on the government's appeals in <u>Morocho v. Jamison</u>, No. 5:25-CV-05930-JMG, 2025 WL 3296300 (E.D. Pa. Nov. 26, 2025), <u>app. filed sub nom.</u> <u>Morocho v. Warden Phila. FDC</u>, No. 26-1150 (3d. Cir. Jan 22. 2026) and <u>Andrade v. Rose</u>, No. 26-603, 2026 WL 401189 (E.D. Pa. Feb. 12, 2026), <u>app. filed sub nom.</u>, <u>De Andrade v. Director Phila. Field Off. Immig.</u>, No. 26-1451 (3d Cir. Mar. 2, 2026).

1225(b)(2)(A).[5]  Under Section 1226(a), a noncitizen in removal proceedings *may* be detained pending a decision on removal.  However, pending a removal decision, the noncitizen may also be released on bond or conditional parole following an individualized hearing before an immigration judge. 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. §§ 236.1(d), 1236.1(d).

Jiminez Hernandez's petition also raises a claim for violation of his right to due process under the Fifth Amendment of the United States Constitution.  The record reflects that Jiminez Hernandez entered the United States illegally (as a child) and was apprehended at or near the United States-Mexico border.  People who enter this country without legal authorization are not stripped immediately of all their rights because of this single illegal act. See Lozano v. City of Hazleton, 496 F. Supp. 2d 477, 498 (M.D. Pa. 2007), aff'd in part, vacated in part, 620 F.3d

---

[5] Jiminez Hernandez is an "applicant for admission" under Section 1225(a), but he is not "seeking admission" because he is not requesting lawful entry into the United States after inspection and authorization. Cunha, 2026 WL 1146044, at *23.  His application for asylum does not evidence that he is seeking admission but reflects efforts to obtain lawful status and avoid removal.  Hernandez Alvarez, 2026 WL 1243395, at *7 ("an alien's status as 'admitted' conveys more than a right to lawfully remain in the United States -- indeed, there are many forms of 'lawful status' that grant an alien the right to remain, yet do not necessarily amount to 'admission,' such as asylum and temporary protected status").  Moreover, the government's reading of Section 1225 "defies the statute's context, structure, history, and purpose; contradicts the Supreme Court's dicta in Jennings [v. Rodriguez, 583 U.S. 281 (2018)] and longstanding Executive Branch practice; and its interpretation of the statute raises serious constitutional questions that should be avoided even if the statutory language were ambiguous." Cunha, 2026 WL 1146044, at *23.

170 (3d Cir. 2010), cert. granted, judgment vacated sub nom. City of Hazleton, Pa. v. Lozano, 563 U.S. 1030 (2011), and aff'd in part, rev'd in part, 724 F.3d 297 (3d Cir. 2013).  That is, the Due Process Clause applies to everyone, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001).

To reiterate, "[n]o person," including the petitioner, "shall…be deprived of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. V. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (citation omitted); see also Zadvydas v. Davis, 533 U.S. 678, 721 (2001) (Kennedy, J., dissenting) ("both removable and inadmissible aliens are entitled to be free from detention that is arbitrary or capricious.").

Based on the analysis above, he has been detained for approximately two months without a review of such detention under a statute that does not apply to him.  Under such facts, a consideration of the procedural due process factors in Mathews v. Eldridge, 424 U.S. 319 (1976) also leads to a conclusion that Jiminez

Hernandez's imprisonment at Pike CCF without a bond hearing under a mandatory detention statute is a violation of his constitutional rights.[6]

There are differing views on the remedy for such a violation. Petitioner is requesting release in bold, capital letters. (Doc. 6, Traverse, at 2).  The government, now expecting the outcome of its Section 1225(b)(2)(A) arguments, requests that petitioner be provided with a bond hearing.  (Doc. 5 at 50).

In support of release as a remedy, petitioner's counsel represents: "Sadly, [b]ond [h]earings in [i]mmigration [c]ourt can no longer be said to occur before a 'neutral immigration judge.' IJ's who previously considered the facts and law and applied individualized judgment to each case now regularly respond to habeas

---

[6] Those factors are 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards; and 3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures would entail. Mathews, 424 U.S. at 335.  First, petitioner's private interest is the interest in not being physically detained by the government, which "is the most elemental of liberty interests[.]" Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004). "The restriction of liberty is particularly acute here where, absent a bond hearing, he would be detained for months or even years while his case proceeds." Cunin v. McShane, No. 3:25-CV-1887, 2025 WL 3542999, at *2 (M.D. Pa. Dec. 10, 2025) (Neary, J.) (citation omitted).  Second, he has been detained without any apparent procedural safeguards, including the ability to obtain a bond hearing. See id. ("There is a certainty—not merely a risk—that the failure to grant [petitioner] a bond hearing would unlawfully deprive him of the opportunity to make the case for his release and incarcerate him indefinitely."); see also Patel v. O'Neil, No. 3:25-CV-2185, 2025 WL 3516865, at *6 (M.D. Pa. Dec. 8, 2025) (citing Bethancourt Soto v. Soto, No. 25-CV-16200, 807 F.Supp.3d 397, 409 (D.N.J. 2025); Quispe v. Rose, No. 3:25-CV-02276, 2025 WL 3537279, at *7 (M.D. Pa. Dec. 10, 2025)).  As to the third consideration, the government has an interest in detaining noncitizens to ensure their appearance at future immigration proceedings and to prevent danger to the community. The government believes that it may vindicate those interests through detention without any individualized determination that this petitioner poses a flight risk or danger. But this goes too far for the reasons discussed in the body of this memorandum.

8

grants by uniformly denying bond or setting bond so high that no individual can pay." Id. Further, he argues: "In an atmosphere where IJ's are seeking to preserve their jobs, they are aware that they must demonstrate obeisance to the Executive Branch, lest they be the next IJ fired for 'unfavorable' grant rates." Id.

These issues are not before the court. The court cannot determine whether Jiminez Hernandez will receive constitutionally adequate process in the future. It can only determine that he received constitutionally inadequate process before today. In holding that Section 1226(a) applies to the petitioner, he is entitled to a timely bond hearing with a neutral IJ.[7]

Based on the due process violation, however, the court will also delineate the standard that applies in that hearing to remedy the violation. That is, the government, not the respondent, will bear the burden to justify his continued detention by clear and convincing evidence that "must be individualized and

---

[7] With respect to petitioner's arguments that IJ's are no longer neutral arbiters, he has not presented actual evidence, only anecdotes. (See Docs. 6 and 7). If such advocacy is actually foreshadowing, petitioner would have compelling arguments that this court maintains continuing jurisdiction to determine whether he received constitutionally adequate due process during that bond hearing. Cf. Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (discussing the limits of the jurisdiction-stripping provision at 8 U.S.C. § 1225(e)) ("Borbot's habeas petition seeks to compel a second bond hearing despite alleging no constitutional defect in the one he received. This comes close to asking this Court to directly review the IJ's bond decision, a task Congress has expressly forbidden us from undertaking."); see also Shonhai v. Lowe, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026) (adopting Quinteros v. Warden Pike Cnty. Corr. Facility, 784 F. App'x 75 (3d Cir. 2019) and Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624 (3d Cir. Feb. 25, 2022) and determining that they preserve a district court's inherent power to enforce its habeas orders by ensuring that the individualized bond hearings are not shams and otherwise comply with the detainee's due process rights).

9

support a finding that continued detention is needed to prevent him from fleeing or harming the community." German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 214 (3d Cir. 2020) (citation omitted). Given the application of this standard to remediate due process violations in other contexts, this is the standard that must be applied by the IJ. See id. ("Even so, we see no basis for abandoning the settled rule that when a party stands to lose his liberty, even temporarily, we hold the Government to a higher burden of proof.").

An IJ will presumably hear evidence and determine whether the government has met that burden. If the petitioner believes that the hearing had a predetermined outcome and violated his constitutional rights, the courts remain open to adjudicate actual cases or controversies, not hypothetical ones used to try to compel outright release.

With respect to outright release, the court will add one more caveat at this time. If the government does not provide Jiminez Hernandez with a bond hearing in accordance with this memorandum within 14 days, the petitioner will be ordered released from Pike CCF on his own recognizance.[8]

---

[8] Jiminez Hernandez's request for attorneys' fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412 is not yet ripe for disposition. A habeas proceeding challenging immigration detention under 28 U.S.C. § 2241 is a "civil action" for purposes of the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), and the EAJA "unambiguously applies to habeas challenges to immigration detention under 28 U.S.C. § 2241." Michelin v. Warden Moshannon Valley Corr. Ctr., 169 F.4th 418, 432 (3d Cir. 2026). Petitioner will thus be permitted to file a motion for costs and fees pursuant to the EAJA within 30 days of the

Consequently, for the reasons set forth above, it is hereby **ORDERED** that:

1) Dany Alexis Jiminez Hernandez's petition for writ of habeas corpus, (Doc. 1), is **GRANTED** in part.

2) Jiminez Hernandez's detention is not governed by 8 U.S.C. § 1225(b)(2)(A) and such detention under that statute violates his right to due process of law.

3) Respondents shall, **within 14 days of the date of this order,** provide Jiminez Hernandez with an individualized bond hearing in accordance with the analysis in this memorandum order.

4) If Jiminez Hernandez does not receive a bond hearing within the 14-day period, he shall be released **no later than June 5, 2026 at 12:00 noon** under the same circumstances that existed prior to his detention, including, release: (1) within the area near where petitioner was picked up; (2) without the imposition of additional conditions (such as ankle monitors or electronic tracking devices); (3) with all clothing and outerwear worn at the time of the detention or other appropriate attire; and (4) with all personal property, including, but not limited to, any driver's license, passport, immigration documents, currency, or cell phone that was seized at the time of detention

---

entry of judgment. 28 U.S.C. § 2412(d)(1)(B); Villa Hernandez v. Kunes, No. 1:25-CV-01847, 2026 WL 411726, at *7 (M.D. Pa. Feb. 13, 2026) (Wilson, J.).

11

and that is currently in their custody, possession, or control, whether maintained directly by respondents or by any contracted or affiliated facility.

5) On or before **June 5, 2026 at 4:00 PM**, respondents shall file a declaration or affidavit pursuant to 28 U.S.C. § 1746 confirming that Jiminez Hernandez has either been provided with a bond hearing or has been released from custody.

6) The Clerk of Court is directed to close this case.

Date: 5/21/26

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court

12