# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DANY ALEXIS JIMENEZ             :        No. 3:26cv1152
HERNANDEZ,                      :
          Petitioner       :        (Judge Munley)
                                :
                                :
                                :
  v.                          :
                                :
MARKWAYNE MULLIN, in his        :
Official Capacity, Secretary of the   :
U.S. Department of Homeland     :
Security; TODD BLANCHE, in his  :
Official Capacity, Acting Attorney   :
General of the United States;   :
CAMMILLA WAMSLEY, in her        :
Official Capacity as Philadelphia    :
Office Director for Enforcement  :
and Removal Operations, U.S.    :
Immigration and Customs         :
Enforcement; CRAIG A. LOWE, in  :
his Official Capacity as the    :
Warden, Pike County            :
Correctional Facility,          :
          Respondents     :

## MEMORANDUM ORDER

Before the court is a motion to enforce habeas relief filed by Petitioner Dany Alexis Jimenez Hernandez. The petitioner is an immigration detainee in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Pike County Correctional Facility ("Pike CCF"). For the reasons set forth below, Jimenez Hernandez's petition will be denied.

## Background

The petitioner is a native and citizen of El Salvador. (Doc. 1-1). He is 19 years old. (Doc. 5-2, Resp. Ex. 1 at 2). He entered the United States as a minor. On August 27, 2023, Jiminez Hernandez was apprehended by the United States Border Patrol after entering the United States near Hidalgo, Texas. Id. at 3. He was released at the border on his own recognizance. Id. Jiminez-Hernandez has a pending I-589 Application for Asylum. Id. He has lived in the United States since that time.

On March 17, 2026, ICE deportation officers and the Franklin County Sheriff's Department took Jimenez Hernandez into custody along with his brother, Henry. Henry was wanted in Harris County, Texas for charges of continuous sexual abuse of a child under 14 years of age.

Jimenez Hernandez filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 30, 2026. (Doc. 1). By way of a prior memorandum and order, the court granted Jimenez Hernandez's petition. Jimenez Hernandez v. Mullin, No. 3:26CV1152, 2026 WL 1433086, at *3 (M.D. Pa. May 21, 2026). Without getting into the granular details, the court determined that Jimenez Hernandez's detention was governed by 8 U.S.C. § 1226(a), not § 1225(b)(2)(A) as the government had argued, and that petitioner had experienced a violation of

2

his procedural due process rights by being detained without a bond hearing. Id. at *2–5.

Habeas relief was granted in the form of a bond hearing with an immigration judge ("IJ"). Id. at 5.  To remedy the due process violation, the burden was placed on the government to justify detention by clear and convincing evidence.  In doing so, the court relied upon the reasoning in German Santos v. Warden Pike Cty. Corr. Facility, 965 F.3d 203 (3d Cir. 2020).

Subsequently, IJ Corey Combs conducted a bond hearing on June 3, 2026. IJ Combs denied bond, indicating that Jimenez Hernandez was a flight risk. (Doc. 11-1, Pet. Ex. A.).

With his motion to enforce, Jiminez Hernandez argues that the bond hearing was constitutionally deficient. (Doc. 11 at 3).  Respondents counter that the court lacks jurisdiction to hear Jimenez Hernandez's motion.  Alternatively, respondents argue that IJ Combs properly conducted an individualized bond hearing in a timely manner and in accordance with the court's prior order. (Doc. 14).

**Jurisdiction**

Generally, the court has jurisdiction over habeas petitions pursuant to 28 U.S.C. § 1331 and § 2241(a).  Respondents challenge jurisdiction, citing 8 U.S.C. § 1226(e).  Under the statute, "[n]o court may set aside any action or

3

decision by the Attorney General under this Section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

Two strands of authority prevent the court from summarily denying Jimenez Hernandez's motion to enforce for lack of jurisdiction.

First, the court may consider Jimenez Hernandez's as a motion to enforce a conditional grant of the habeas writ. Conditional writs accommodate governments. That is, a court may hold that some infirmity justifies relief but also provide the government with a time window to cure the error. See Haskell v. Folino, 461 F. Supp. 3d 202, 210 (W.D. Pa. 2020) (citing Satterlee v. Wolfenbarger, 453 F.3d 362, 369 (6th Cir. 2006) and Phifer v. Warden, 53 F.3d 859, 864–65 (7th Cir. 1995)). In such scenarios, district courts maintain continuing jurisdiction to address alleged noncompliance with a conditional writ. Gibbs v. Frank, 500 F.3d 202, 205 (3d Cir. 2007) (citing Phifer, 53 F.3d at 865; Mickens–Thomas v. Vaughn, 355 F.3d 294, 303 (3d Cir. 2004)); see also Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011) (explaining that an immigration detainee was "correct that the district court had authority to review compliance with its earlier order" directing that the detainee receive a bond hearing before an immigration judge); Shonhai v. Lowe, No. CV 3:24-229, 2026 WL 538865, at *6 (M.D. Pa. Feb. 26, 2026) (Mannion, J.) (collecting district court cases).

4

The court's prior order directed the respondents to provide Jimenez Hernandez an individualized bond hearing within 14 days in accordance with the analysis in the accompanying memorandum. The court also ordered Jimenez Hernandez released if he did not receive a bond hearing within the 14-day period.

Assume that the respondents did not comply with the second condition in that order. There would be no reasonable jurisdictional dispute if the court then, upon notice, entered a subsequent order releasing Jimenez Hernandez if he was not provided with a bond hearing in that period.

Here, Jimenez Hernandez alleges that he did not receive a bond hearing in accordance with the first condition, i.e., in accordance with the memorandum's reference to the burden of proof being placed on the government at such a hearing to prove danger or flight risk by clear and convincing evidence. Jimenez Hernandez, 2026 WL 1433086 at *5. The court sees no reason why it would lack jurisdiction to consider whether the first condition was satisfied by the government.

Second, despite its jurisdiction-stripping language, Section 1226(e) contains no explicit provision barring habeas review. Demore v. Kim, 538 U.S. 510, 517 (2003). The Third Circuit has also never used Section 1226(e) to preclude petitioners from raising a constitutional challenge to the way an

immigration bond hearing was conducted. See Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (noting that the habeas petitioner sought "to compel a second bond hearing despite alleging no constitutional defect in the one he received."); Sylvain v. Att'y Gen. of U.S., 714 F.3d 150, 155 (3d Cir. 2013) (citing Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir.2011) ("[Section 1226(e) ] does not limit habeas jurisdiction over constitutional claims or questions of law.")).  Further, in non-precedential opinions, the appellate court has recognized such jurisdiction.  Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair."); Quinteros v. Warden Pike Cnty. Corr. Facility, 784 F. App'x 75, 77 (3d Cir. 2019) ("Though we may not review discretionary decisionmaking involved in denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis.").

Jimenez Hernandez's motion to enforce can be distilled down to an argument that he did not receive a fundamentally fair bond hearing in violation of

6

his constitutional rights.  Therefore, under both strands of authority, the court has jurisdiction to consider Jimenez Hernandez's motion to enforce on its merits.[1]

**Analysis**

IJ Combs determined that Jimenez Hernandez's continued detention was necessary to prevent the respondent from fleeing. (Doc. 11-1).  Petitioner argues that IJ Combs "focused exclusively on [p]etitioner's asylum claim as a potential form of relief." (Doc. 11 at 3).  Petitioner also argues that IJ Combs's order does not articulate the burden the court placed on the government. Id.

Neither of these arguments justifies relief.  Rather, upon review, IJ Combs presided over a 20-minute bond hearing. (Doc. 16, Audio Recording of Hearing).  Petitioner was represented by the same counsel representing him in this habeas action. See Goldberg v. Kelly, 397 U.S. 254, 270–71 (1970). There was a complete record of the proceedings. See Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996).  The hearing was conducted, at Jimenez Hernandez's request, in English. See id. (discussing the use of a competent translator or interpreter in the

---

[1] The government also offers up the petitioner's failure to exhaust administrative remedies as a bar to hearing the motion.  The motion is a request for the court to review the IJ's compliance with its previous conditional habeas order.  Thus, there would be nothing left for the petitioner to exhaust. A.D. v. Oddo, No. CV 25-460J, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026). In any event, the exhaustion requirement would be prudential in this case, i.e., judge-made and discretionary. Prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). Jimenez Hernandez has been detained under Section 1226(a) for several months.  Therefore, any exhaustion requirement is excused.

petitioner's primary language during IJ hearings).  During the initial moments of the bond hearing, the IJ also cited the court's prior decision:

> So I know we're here pursuant to a district court order from May 21st, which gives 14 days for an individualized bond hearing. The government has the burden to demonstrate by clear and convincing evidence to show continued detention is necessary.

(Doc. 16, 2:13–2:29).

Thus, the IJ was aware that he was to apply a different standard than the typical custody determination hearing for detainees held under 8 U.S.C. § 1226(a).

The IJ also considered evidence regarding the petitioner's flight risk on a current basis. See Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999), amended, (Dec. 30, 1999) ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.").  That is, the government first presented its position that Jimenez Hernandez was a flight risk for several reasons.  Counsel for DHS argued that the petitioner did not have any community ties and did not have family members who could assist him with obtaining legal status.  She referenced that his brother Henry was also without legal status and was wanted in Texas for criminal charges.  She referenced that the petitioner had lived at different

8

locations in his three years in the United States.  She also discussed what she argued were weaknesses in his application for asylum.

After DHS presented its arguments referencing the evidence of record, and although he did not bear any burden at the hearing, Jimenez Hernandez's counsel was given an opportunity to make arguments on his client's behalf.  See Abdulai v. Ashcroft, 239 F.3d 542, 549–50 (3d Cir. 2001).  And petitioner's counsel did just that.  He emphasized Jimenez Hernandez's accomplishments in his brief time in the United States: learning English, obtaining a high school degree, and securing full-time employment at a retail distribution center.  Petitioner's counsel argued the strengths of his client's asylum claim and indicated that he believed that his client also had a strong case for a special immigrant juvenile ("SIJ") classification due to his arrival as an unaccompanied minor and his involvement with the United States Office of Refugee Resettlement ("ORR").  From a due process standpoint, petitioner's counsel was permitted to make his points at the bond hearing.  They are the same points advanced in the motion to enforce.

With respect to any decision, Jimenez Hernandez was entitled to factfinding based on the record produced before the IJ and disclosed to him.  Id.  The IJ reviewed the entire documentary record supplied by the parties prior to the hearing.  Furthermore, Jiminez Hernandez was also entitled to a reasoned

9

on-the-record decision, sufficient for the court to determine whether the hearing complied with due process.  At the conclusion of the bond hearing, Jimenez Hernandez received an on-the-record judgment with the IJ articulating his reasoning.  Referring to Jimenez Hernandez as the respondent in the proceedings, the IJ stated:

> The burden for this bond hearing is on the government to demonstrate by clear and convincing evidence that continued detention is necessary to either prevent the respondent from fleeing or harming the community. As far as harming the community, the court does not find that the respondent is a danger. Nothing in the record would make the court believe that he is likely to harm the community. As far as flight risk, the court does consider the factors laid out in Matter of Guerra [24 I&N Dec. 37 (BIA 2006)], although we do have a different burden, obviously, than the a normal 8 U.S.C. § 1226(a) bond hearing.  But those are guiding factors for the court.
>
> The court has reviewed through all the documents as the court stated, the court does see the sponsor documents from the individual, that counsel has spoken about and that, who would like to sponsor the respondent.
>
> The court does know that the respondent entered the United States without inspection, which is of concern because it shows a lack of following immigration laws in the United States. The respondent has been here since August 25th, 2023 thereabouts, which is slightly less than three years, which is not a particularly long amount of time.
>
> We do have letters of support and the court has reviewed those and given them the appropriate weight. The court would note that the respondent does not have much in the way of family members here. His I-589 shows that his parents and one of his siblings are still in El Salvador. He

has one brother who is here. But according to the documents, that brother is wanted, for sexual abuse of a minor in Texas and has at this time been detained by ICE as well. So the respondent does not really have any family members outside of detention here.

We do have employment history for the respondent. Despite his young age. He has been working at Walmart since…since very shortly after turning 18., basically

We do have a, an I-589 that was filed. We're not here to adjudicate it today, but the court does have concerns about its speculative nature given the gang claim in it and the current state of case law related to claims like this and their likelihood of success.

The court does know that the respondent was in ORR custody when he first entered the United States. The respondent was then released from that ORR custody, It looks like, as he said, around September 2023. Since then, he has lived at four addresses between Texas and Pennsylvania. He hasn't had a very consistent address history.

The court has to weigh all of these factors together in the totality of the circumstances. When the court does weigh all of these factors together, the court finds that the department has met its burden to show that the respondent's continued detention is necessary to prevent him from being a flight risk. So, the court will have to deny the respondent's bond request today.

(Doc. 16, 16:35–19:54).

Contrary to Jimenez Hernandez's arguments, the IJ considered matters other than his asylum claim.  As for the tenor and tone of the hearing, the IJ did not give this matter "grudging and perfunctory review." Chi Thon Ngo, 192 F.3d

at 398.  He did not step into the role of the attorney for the government, nor did he advocate for the government's position. See Abulashvili v. Att'y Gen. of U.S., 663 F.3d 197, 207 (3d Cir. 2011); Abdulrahman v. Ashcroft, 330 F.3d 587, 596 (3d Cir. 2003).  Absent any other evidence from Jimenez Hernandez, the court must conclude that the bond hearing was conducted by a neutral and impartial IJ and satisfied due process.  Given the fundamentally fair proceedings before the IJ, petitioner's motion to enforce simply asks for the evidence to be reweighed, which the court is not authorized to do.

Consequently, for the reasons set forth above, it is hereby **ORDERED** that the petitioner's motion to enforce, (Doc. 11), is **DENIED** and the Clerk of Court is directed to close this case.

Date: 7/16/26

BY THE COURT:

**JUDGE JULIA K. MUNLEY**
**United States District Court**

12